1

2

3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN OF KENTUCKY
## LEXINGTON DIVISION

4

5

6   Anthony Sloan )
                    Plaintiff, )

7       vs. )                        Case No.

8   The United Group, Inc. )         Judge
9   dba Auto Plaza USA )
    c/o Christopher Spedding, statutory. )   Mag. Judge
10  agent )
    271 W. Short St. )                Complaint for Violation of the
11  Suite 100 )                       Federal Truth-in-Lending Act, The
    Lexington, Ky 40507 )             Ky. Consumer Protection Act, Civil
12                    )               Fraud & Conversion, Actual,
    and )                             Compensatory & Punitive Damages;
13                    )               Attorney Fees Jury Demand.
    Auto Plaza USA )
14  c/o Christopher Spedding )
    271 W. Short St. )
15  Suite 100 )
    Lexington, Ky 40507 )
16                    Defendants )

17                    )

18  _____

19
                        **INTRODUCTION**
20

21          This suit involves serious and significant allegations of unlawful and abusive

22  conduct on the part of the Defendant, a seller of motor vehicles in the Commonwealth,

23  toward the Plaintiff in connection with the sale and financing of a used motor vehicle.

24  The abuses consist of both statutory and common law violations. Specifically, Defendants

25  violated the federal truth-in-lending act [tila] requiring meaningful disclosure of credit

26  terms both in advance of a credit transaction and after its consummation by unilaterally

27  altering the terms of a consummated and binding consumer credit transaction.

28

Additionally, Defendants engaged in fraudulent practices which violate both the Ky Consumer Protection Act ["KCPA"] as well as those constituting common law fraud and conversion.

**PARTIES**

1. Anthony Sloan [hereinafter "Plaintiff"], at all times referenced herein, was and continues to be a resident of Scott County, Ky. and a natural person and consumer as the term is defined under all statutory and common law claims plead herein.

2. Defendant, Auto Plaza USA appears to be an assumed name of the United Group, Inc. which resides in Jessamine County, Ky.[hereinafter "Plaza" or "Defendants"] and at all times mentioned herein is, among other things, a "motor vehicle dealer", as defined in the Ky Motor Vehicle Sales Act, K.R.S. §190.010(2), engaged in the business of selling, offering to sell, soliciting, or advertising the same, of used motor vehicles, or possessing motor vehicles for the purpose of resale, either on its own account, or on behalf of another, either as its primary business or incidental thereto doing business at 2000 Vince Rd., Nicholasville, Ky. 40356.

**FACTUAL ALLEGATIONS**

3. Plaintiff anticipated receiving a large sum of cash in the immediate future from an insurance claim from which he believed would could purchase a vehicle outright or, at least, finance one making a significant down payment. Therefore, on October 8, 2017 Plaintiff and his wife [hereinafter collectively "Plaintiff] went online and located a 2011 Toyota Tacoma 4WD Double Cab Short Bed advertised by the Defendants for $17,998.00 [hereinafter the "vehicle"].

1

2

3      4. On October 9, 2017 Plaintiff communicated by telephone and text with one

4   "Chris Smither" [hereinafter "Smither"] of the Defendants who invited Plaintiff to come

5   view the vehicle in person. Smither, that same day, later emailed an advertisement of the

6   vehicle to Plaintiff indicating that it had been reduced in price to $17,577.00 [See

7   Plaintiff's exhibit "A"].

8      5. On October 10, 2017 Plaintiff  drove to Defendants' location and met with

9   Smither and test drove the vehicle after which he expressed his desire to purchase it.

10      6. Thereafter the Parties came to a verbal understanding and agreement whereby

11   the Plaintiff would purchase the vehicle for the advertised price of  $17,577.00 and the

12   Defendants would finance that purchase.  Defendants demanded, however, that Plaintiff

13   make a down payment of $7500 which Plaintiff did not have at the time. Defendants

14   agreed to accept a personal check from the Plaintiff in the amount of $7500.00 which,

15   when the funds arrived, Plaintiff would authorize Defendants to present which he, in fact,

16   did on October 19, 2017. In return Plaintiff would be allowed to take immediate

17   possession of the vehicle.

18      7.  Defendants then presented the Plaintiff with a retail installment sales contract

19   and credit disclosure document [**hereinafter the "Risc"**] for execution. However, instead

20   of financing the cash price at $17,577.00 as advertised and agreed to during their

21   negotiations, the Risc disclosed a price of $22,208.00 to which was added $675 in

22   miscellaneous fees resulting in a cash price of $22,883.00 [See Plaintiff's exhibit "B"].

23   From that amount the $7500.00 down payment was deducted leaving $15,383.00 as the

24   amount financed instead of what was understood and agreed to been $10,752.00.

25      8. The Risc further disclosed an APR of 25% resulting in finance charge of

26   $11,707.60 which, when added to the amount financed, resulted in a total of payments of

27   $27,090.60. Further broken down into 60 consecutive monthly payments of $451.51 with

28   the first payment to commence on November 9, 2017 to be paid to Defendants.

1

2

3      9. Further, as part of this same transaction Defendants required Plaintiff to sign an

4   "affidavit of spot delivery" [**hereinafter the "Spot"**] providing that Defendants could

5   change the terms of the deal by demanding the return of  the vehicle if it was unable sell

6   the deal or to obtain financing from third party lender although, by the terms of the Risc,

7   Defendants had already agreed itself to finance the deal. The spot was neither  referenced

8   nor integrated into the wording of the Risc.

9      10. Shortly after taking possession of the vehicle Plaintiff observed that the tires

10  were bad, the upholstery was dirty and stained, the horn didn't work, the driver mirror

11  was broken, the windshield was nicked and floor mats were missing. When Plaintiff

12  complained Defendants reluctantly agreed to address these issues if he would bring the

13  vehicle back to Defendants' location.

14     11. On October 18, 2017 Plaintiff took off from work and drove to the Defendants

15  anticipating that all these issues would be resolved. While there Plaintiff, who began to

16  detail all these issues, was put-off by Defendants who claimed that it had to order a

17  number of parts which would require Plaintiff once again to return to its premises.

18     12.  Thereafter, for a period of several weeks between October 18, 2017 and

19  November 16, 2007 Plaintiff  attempted to make arrangements to schedule work on his

20  vehicle as well as to obtain information on who and where to make his payments but was

21  unable to get a response from the Defendants.

22     13. When Plaintiff contacted Defendants on November 17, 2017 he was told that it

23  could make the required repairs that day and to come by. Plaintiff,  once again, took off

24  from work and drove to the Defendants with his initial installment payment and to,

25  hopefully, have Defendants address all his issues with the vehicle which Defendants had

26  promised.

27

28

1

2

3

4          14. While there Defendants immediately took possession of the vehicle claiming

5  that it was repossessing it because Plaintiff was in default and refused to release it unless

6  it received an additional $2500.00. Plaintiff was somehow able to convince the

7  Defendants to accept $750. However, in order to re-obtain his vehicle, Plaintiff was

8  forced to sign a new Risc which unilaterally and without any consideration paid to the

9  Plaintiff altered the credit disclosure terms of the original Risc [See Plaintiff's Exhibit

10  "C"].

11          15. Specifically, the new credit disclosure altered each of the credit terms of the

12  original Risc by adding $1258.50 to the cash price and amount financed, increasing the

13  APR as well as the total of payments. It also changed the schedule of payments from

14  monthly to bi-weekly and, therefore, the number of payments.

15          16. Defendants also required the Plaintiff to execute a buyer's order which

16  contained an Arbitration provision not previously agreed to which required the Plaintiff to

17  arbitrate any dispute it might have with the Defendants [See Plaintiff's Exhibit "D"].

18  Both exhibit "C" & "D", while executed on November 17, 2017 were backdated by the

19  Defendants to October 10, 2017 to make it falsely appear as if the Plaintiff had originally

20  agreed to them.

21          17. As of this writing in spite of taking in excess of $8250.00 from the Plaintiff,

22  has failed to transfer title to the vehicle making it impossible for him to register it and has

23  failed to address or to make any of the repairs it promised to make on the vehicle.

24

25

26

27

28

1

2

3                                    **Claim One**
                             [federal truth-in-lending act]
4

5                                  **Jurisdiction**

6        18. This is an action for actual and statutory damages plus costs and attorneys'

7   fees, brought pursuant to 15 U.S.C. §1601(a), et seq., 15 U.S.C. §1638, Regulation Z, 12

8   C.F.R. §226.1, et seq., and 15 U.S.C. §1640(a) [hereinafter referred to as "tila or the

9   "act"]**.**

10       19. The jurisdiction of this Court is invoked pursuant to 15 U.S.C. § 1640(e) and

11  28 U.S.C.§ 1337.  Venue is proper because the acts complained of occurred in this

12  District and Defendants resides in this District.

13                                  **Count One**

14       20. Plaintiff incorporates by reference paragraphs 1-17 as if fully rewritten herein.

15       21. The parties entered into a credit sale for the purchase and financing of the

16  subject vehicle on October 10, 2017 and executed a retail installment sales contract

17  disclosing all material credit terms required by the Act [See exhibit "B"].

18       22. On November 17, 2017 Defendants unlawfully attempted to repossess

19  Plaintiff's vehicle and in order to re-obtain it, Plaintiff was required to execute a second

20  Retail Installment Sales Contract disclosing a different and less favorable credit terms and

21  offering no additional consideration to the Plaintiff for doing so other than to allow him

22  to retain his vehicle.

23       23. By taking the action it did on November 17 as described in paragraph 22,

24  Defendants, unilaterally and against the will of the Plaintiff and by coercion, altered and

25  nullified all the material disclosures that it had made on October 10, 2017 and, therefore

26

27

28

                                       - 6 -

1
2
3  it, for all practical purposes, failed to meaningfully and accurately disclose all the material
4  credit terms required to be disclosed such as "amount financed", "finance charge",
5  "APR", "total of payments" it was required to make on October 10, 2017.
6
7                                    **Count Two**
8        24. Plaintiff incorporates by reference paragraphs 1-17 as if fully rewritten herein.
9        25. On October 10, 2017 in connection with a consumer credit transaction
10  Defendants and Plaintiff agreed to a retail installment sales agreement containing the
11  disclosure of certain required material credit terms [See exhibit "B"]disclosed certain
12  material credit terms.
13        26. Also on October 10, 2017 the Defendants required the Plaintiff to execute an
14  affidavit of spot delivery which specifically contradicts exhibit "B" [See exhibit "E"].
15        27. Exhibit "E" purports to relieve Defendants from its status as creditor and to
16  waive the consumer protection of TILA. Such waiver forms and waiver provisions are
17  illegal as being contrary to the public policy enacted by TILA whose very purpose is to
18  provide a ***meaningful*** disclosure of credit terms to consumers, including Plaintiffs.
19        28. According to Defendants' unilateral revocation language, Defendants disclaim
20  that it is a creditor despite the parties' RISC which expressly identifies and represents
21  Defendants as the creditor. Plaintiff alleges that Defendants' "spot delivery" form and
22  language constitutes an illegal waiver of statutory obligations and consumer rights
23  because Defendants use them to circumvent its obligations under TILA the RISC itself,
24  which concomitantly waives the buyers' statutory and contractual rights.  The statutes and
25  the RISC provide  that the buyer-signed contract be the parties' final integrated writing
26  and be binding on Defendants and the consumer at the time of signing and vehicle
27  delivery, i.e., consummation.  The RISC contains a merger clause: **"Your and our entire**
28  **agreement is contained in this contact. .........Any change to this contract must be in**

1

2

3

4   **writing and signed by you and us."** The RISC and these consumer protection statutes

5   are to be construed liberally in favor of consumers and strictly against the seller.

6       29. KRS §190.100(1)(a)(2) requires that a retail installment sale contract contain

7   ALL the agreements between the parties.

8       30. This combination of, on the one hand, the extension of credit in

9   unambiguous terms, while on the other hand simultaneously withdrawing the extension of

10  credit in the same document violates TILA, common law contract principles, i.e., merger

11  doctrine, mutuality of obligation, consideration.

12      31. As such, the Defendants have failed to disclose any of the material disclosures

13  required by tila as mandated in 15 U.S.C.§1638 in any meaningful manner which

14  requires, among other things, the disclosure of the "amount financed", the "finance

15  charge", the "APR" and the "total of payments."

16

17  **[Claim Two]**
    **[Ky Consumer Protection Act "KCPA"]**

18

    **Jurisdiction**

19

20      32. The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C.

    § 1367, in that Plaintiff's state claim is so related to their federal statutory claims the

21

22  action within such original jurisdiction that they form part of the same case or controversy

    under Article III of the United States Constitution.

23

24      33. Plaintiff hereby incorporates and restates paragraphs 1-17 as if fully re-written

    herein.

25

26      34. Plaintiff is a "natural person" as defined in the Kentucky Consumer Protection

    Act [hereinafter the "KCPA"] at §367.110(1).

27

28      35. Defendants are "Persons" as defined in the KCPA at §367.110(1).

36. Defendants were and are engaged in commerce who, at all times mentioned herein, offered to provide a service covered by the KCPA at §367.110(2).

37. In the course of its dealings with Plaintiff, Defendants made numerous false and deceptive representations to Plaintiff and concealed critical and material information from him concerning the vehicle; and, otherwise consistent with the allegations made herein.

38. Further, without limiting the scope of any and all violations of law which may have been committed by Defendants, they engaged in the following acts which expressly constituted unfair, deceptive and/or unconscionable acts.

**Count One**

39. By advertising and informing Plaintiff that it had agreed to sell the vehicle to him for $17,577.00 only to increase the price by instead transposing the figure of $22,208.00 on to its retail installment sales contract form on October 10, 2017 and then again to $24,141.50 on a second retail installment sales contract on November 17, 2017 [see Plaintiff's exhibit "A" & "C"].

40. This conduct, not only increased the cash price and amount financed dramatically but also, by necessity, increased the finance charge and total of payments on the transaction by thousands of dollars on each occasion.

**Count Two**

41. By luring the Plaintiff to its location on November 17, 2017 on the false pretext that it would fix and repair his vehicle, only to unlawfully take and hold his vehicle hostage in order to collect additional sums of money from him and to force him to sign additional documentation on terms that were less favorable than the original terms.

1

2

3

4                              **Count Three**

5        42. By selling the Plaintiff a vehicle taking $8250 from him and failing to transfer

6  title to the vehicle.

7                              **Count Four**

8        43. By promising to repair and replace certain items on the vehicle and then failing

9  and refusing to do so.

10       44. Each of the Defendants' actions have resulted in significant monetary loss as

11 well as stress, anxiety and emotional upset to the Plaintiff.

12

13                           **[Claim Three]**
                        **[Common Law Fraud & Deceit]**
14

15                            **Jurisdiction**

16        45. The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C.

17 § 1367, in that Plaintiff's state claim is so related to their federal statutory claims the

18 action within such original jurisdiction that they form part of the same case or controversy

19 under Article III of the United States Constitution.

20       46. Plaintiff hereby incorporates and restates paragraphs 1-17 and 39-42 as if fully

21 re-written herein.

22       47. On October 10, 2017 Defendants represented that they had sold Plaintiff a

23 2011 Toyota Tacoma Truck for a cash price of $17,577.00.

24       48. Defendants further represented that, in return for that $7500 down payment and

25 an agreement to pay the balance in consecutive monthly payments, they would transfer

26 title to him while maintaining a security interest.

27       49. Defendants have not transferred title to the Plaintiff although he has paid them

28 a sum, to date, in excess of $8250.00.

1

2

3     50. Defendants represented that the price Plaintiff was paying for the vehicle was

4 the advertised price as well as the negotiated price and all the while Defendants concealed

5 that they had changed the price to one that was significantly higher.

6     51. Defendants made representations to the Plaintiff which were false and

7 misleading as well as concealing material information from him to the agreed upon price

8 on 2 separate occasions: October 10, 2017 and November 17, 2017.

9     52. Defendants were aware that the representations they made at the time were

10 false and inaccurate which were made wilfully and with malicious and fraudulent intent

11 to deprive the Plaintiff of his property.

12     53. Plaintiff reasonably relied on Defendants' false representations to his

13 detriment.

14     54. As a result Plaintiff has been injured financially.

15

16                              **[Claim Four]**
                       **[Common Law Theft & Conversion]**
17

18                              <u>**Jurisdiction**</u>

19      55. The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C.

20 § 1367, in that Plaintiff's state claim is so related to their federal statutory claims the

21 action within such original jurisdiction that they form part of the same case or controversy

22 under Article III of the United States Constitution.

23     56. Plaintiff hereby incorporates and restates paragraphs 1-17 and 39-42 as if fully

24 re-written herein.

25

26

27

28

**Count One**

57. On October 9, 2017 Defendants advertised the sale of the vehicle for the cash price of $17,577.00 [See exhibit "A"].

58. On October 10, 2017 the parties, in person, negotiated a sale for the advertised price.

59. Defendants did not provide Plaintiff with a sales contract or buyer's order but, instead, unbeknownst to Plaintiff transposed inflated and false numbers of $22,208.00 onto a retail installment sales contract on which other credit charges such as the finance charge would be calculated at an APR of 25%.

60. Defendants acted wilfully to serve their own selfish interests, knowing that such conduct would wrongfully deprive Plaintiff of a significant sum of money which was his property.

61. Defendants, by engaging in such activity described herein, essentially, converted and stole property belonging to the Plaintiff in the form of cash currency.

**Count Two**

62. On October 10, 2017 Defendants represented that if Plaintiff would pay a down payment of $7500 and agree to pay monthly installments pursuant to a retail installment sales it would sell him a 2011 Toyota Tacoma Pickup truck.

63. Plaintiff agreed by making the down payment and executing a retail installment sale contract for the balance.

64. On November 17, 2017 Defendants took possession of his vehicle and would not release it until he paid another $750, making a total of $8250.00.

65. However, Defendants have failed and refuse to transfer title and ownership of the vehicle to the Plaintiff.

- 12 -

66.  Defendants have acted wilfully to serve their own selfish interests, knowing that such conduct would wrongfully deprive Plaintiff of a significant sum of money which was his property.

67. Defendants, by engaging in such activity described herein, essentially, converted and stole property belonging to the Plaintiff in the form of cash currency in the amount of $8250.

**Claim Five**
**[FTC USED CAR WINDOW STICKER RULE]**

**Jurisdiction**

68. The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1367, in that Plaintiff's state claim is so related to their federal statutory claims the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

69. Plaintiff hereby incorporates and restates paragraphs 1-17 and 39-42 as if fully re-written herein.

70.  This claim is for violations of the FTC Used Car Window Sticker Rule by Defendants, 16 C.F.R. 455.1, et seq.

71.  During a consumer transaction between the parties, the Defendants failed to properly fill out and post on the subject vehicle, and later deliver a copy to Plaintiff, a Buyers Guide form that complied with applicable law.

72.  At all times relevant, the motor vehicle the Defendants sold Plaintiff was a used vehicle, Defendants were Dealers and Plaintiff was a Consumer.

1

2

3    73.  Defendants entered into a consumer transaction with Plaintiff and at that time

4    sold or offered for sale a used vehicle in or affecting commerce, as commerce is defined

5    in the Federal Trade Commission Act, and at that time failed to have properly posted on

6    the subject vehicle a "window sticker" form, a.k.a. a "Buyers Guide" form, that complied

7    with the FTC Used Car Window Sticker Rule.

8    74.  Defendants entered into a consumer transaction with Plaintiff and at that time

9    offered a used vehicle for sale to the consumer-Plaintiff without preparing, filling- in as

10   applicable and displaying on that vehicle a "Buyer's Guide" in the form and manner

11   required by law for its display and use.

12   75.  At the time the Defendants dealt with Plaintiff, they knew or should have

13   known that its forms did not comply with the applicable law.

14   76.  As a result of the above, among other things, Defendants committed an unfair

15   and/or deceptive act or practice in connection with a consumer transaction.

16   77.  As a result of the above, inter alia, the Defendants committed an unfair or

17   deceptive act or practice in violation of the FTC's Used Car Window Sticker Rule and the

18   Consumer Act.

19   78.  As a result of the above, inter alia, the Defendants committed one or more

20   unfair or deceptive acts or practices in violation of the Kentucky Consumer Protection

21   Act.

22

23

24

25

26

27

28

1

2

3

# PRAYER FOR RELIEF

4
    **WHEREFORE,** Plaintiff prays for the following relief:

5
    (1) in claim one, on all counts, for statutory and all actual damages he is able to

6
prove;

7
    (2) in claim two, on all counts, actual, statutory and punitive damages;

8
    (3) in claim three compensatory and punitive damages;

9
    (4) in claim four, on all counts, compensatory and punitive damages;

10
    (5) in claim five for rescission and a refund of all monies paid;

11
    (6) in all claims for reimbursement for all attorney fees for time expended by

12
counsel in connection with the prosecution of all claims;

13
    (7) for reimbursement for all costs and expenses incurred;

14
    (8) for a trial by jury on all appropriate factual issues; and,

15
    (9) for any and all other relief this Court may deem appropriate.

16

17
                      Respectfully submitted by:

18

19
                       /s/Steven C. Shane

20
                      Steven C. Shane (0041124)
                      Trial Attorney for Plaintiff

21
                      P.O. Box 73067

22
                      Bellevue, Ky. 41073
                      (859) 431-7800

23
                      (859) 431-3100 facsimile
                      shanelaw@fuse.net

24

25

26

27

28